# Wytheville.

## KINCHELOE V. TAYLOR.

### June 13, 1918.

### Absent, Burks, J.

1. VENDOR AND PURCHASER—*Conditional Contract.*—A memorandum agreement for the sale of a farm, after stating the consideration and terms of payment, provided that, whereas it was understood by both the vendor and vendee that there was pending a certain suit against the vendor covering the question of possession of the farm, it was therefore understood and agreed that the vendor was to deliver immediate possession of the farm as soon as the aforesaid suit was either settled or dismissed, at which time the sale was to be closed. The concluding clause of the memorandum provided that in the event the vendor did not deliver the possession of the farm, he should reimburse the grantee any and all sums paid on account of the purchase money.

   *Held:* That the contract was a conditional one, only to become effective in the event the complainant in the pending suit was divested of possession and interest in the farm, and stipulating on its face the damages to be paid the grantee should the complainant not be so divested, and where a sale made by the complainant in said suit was confirmed by the court, that such confirmation rendered null and void and of no effect the conditional contract.

2. JOINT ADVENTURES—*Contracts—Jurisdiction of Equity.*—Where a vendee purchased a farm at the suggestion and through the efforts of S., and there was a prior parol agreement between the vendee and S. that the title should be taken in the vendee's name, but that the farm was to be sold, and S. in consideration of his services was to receive one-half of the proceeds of sale in excess of $8,500, S. was within his rights in invoking the aid of a court of equity to protect his interests under the contract, and the confirmation by the court of a sale effectuated by S. with one C. was within the pleadings and warranted by the evidence in the case at bar.

3.  LIS PENDENS—*Notice of Suit.*—Where the purchaser of a farm
    had both actual and constructive notice of a suit against the
    vendor, and of the rights and equities in the farm of the com-
    plainant in that suit, he took the property subject to any decree
    which might be rendered in the suit with respect to the prop-
    erty, and the broker who negotiated the sale with actual and
    constructive notice of the pending suit occupied no higher
    ground than the purchaser.

4.  ILLEGAL CONTRACTS—*Stifling Bidding.*—A secret agreement en-
    tered into between the purchaser of a farm, his broker, and a
    third party, that if the third party would withdraw an offer
    of his for the farm, the purchaser would consummate his pur-
    chase and then sell to the third party for the price offered by
    him, was illegal as an agreement to stifle bidding, and opposed
    to public policy.

Appeal from a decree of the Circuit Court of Fairfax
county.  Decree in favor of complainant and against peti-
tioners.  Petitioners appeal.

*Affirmed.*

The opinion states the case.

*H. W. Smith, Thos. H. Lion* and *C. Keith Carlin,* for the
appellants.

*Moore, Keith, McCandlish & Hall, C. V. Ford* and *Geo.
L. Whitford,* for the appellees.

WHITTLE, P., delivered the opinion of the court.

Appellants, Arthur N. Meloy and James M. Kincheloe,
complain of certain decrees of the circuit court denying to
the former the benefit of an alleged completed purchase of
the Aspen Hill farm, in Fairfax county, and to the latter,
a real estate broker, a flat commission of $500 for effecting
the sale.

Stated generally, the controlling facts are these:  In June,
1916, Strayer filed his bill against Taylor, in which he as-

serted claim to an equitable interest in the farm. His contention being that at his suggestion and through his efforts
Taylor purchased the property; that there was a prior parol
agreement between them that the title should be taken in
Taylor's name, but that the farm was to be sold, and Strayer
in consideration of his services was to receive one-half of
the proceeds of sale in excess of $8,500; that on May 8,
1916, Taylor tendered to Strayer a writing as follows: "In
compliance with our agreement relative to Aspen Hill farm
now owned by me, I agreeing to allow you one-half of the
proceeds of sale over $8,500, interest and taxes, and you in
consideration of the same to move on and live on the farm
and show same at all times, price and terms of sale of farm
to be ratified by me. In case farm is not sold by October 1,
1916, said Strayer can at his option move off of farm, but
must continue to look after same." The bill further alleged
that Strayer moved on the farm in pursuance of his "verbal
understanding;" that about one month afterwards and
while he was endeavoring to sell the property, a controversy
arose between him and Taylor as to the possession of a
certain part of the dwelling, as a result of which Taylor
announced his purpose to sell the farm for $8,500 and $100
additional to cover the expenses of grading a road thereon,
thereby seeking to deprive Strayer of the opportunity to
sell the property and to destroy his interest therein. The
bill prayed that Taylor be enjoined from selling the farm,
or disturbing Strayer in his occupancy and possession
thereof pending the suit, and for a sale of the property
under the supervision of the court and an equitable division
of the proceeds, and for other further and complete relief.
A *lis pendens* was filed with the bill and duly docketed and
recorded, which describe the farm by name and metes and
bounds, and plainly set out the scope and objects of the suit.
On September 1, 1916, Taylor filed his answer denying the
allegation of the bill in respect to the parol contract, and

averred that Strayer was the agent of his vendor, Crawford, in negotiating the sale of the farm, and that no responsibility rested upon respondent to remunerate him for any services that he may have rendered in that behalf; that the written agreement between them, and not any parol understanding, measured the rights and liabilities of the parties; that respondent was willing to live up to that agreement; that he had not obstructed Strayer in selling the property, and that he was still willing for him to make such sale, and to allow him one-half of the proceeds in excess of $8,500, in accordance with their written agreement.

On September 27, 1916, Taylor listed the farm with Kincheloe for sale. A few days later Kincheloe opened negotiations with Meloy, a prospective purchaser, for the sale of the farm, pending which, in addition to the constructive notice imparted by the *lis pendens*, both of them had actual notice from Taylor and his attorney of the pendency of the Strayer suit. On October 12, 1916, these negotiations culminated in a memorandum agreement to the effect that in consideration of $10 and other considerations therein mentioned, Taylor agreed to sell and convey to Meloy the farm for $10,500, $250 cash, $3,250 within sixty days, "or on date thereafter when deed is delivered (and certain stipulations with respect to residue of purchase money, etc.)" Then follow these provisions: "Whereas it is understood by both parties hereto that there is pending a certain suit in Fairfax county * * * covering the question of possession. Now, therefore, it is understood and agreed that said party of the first part is to deliver immediate possession of the above mentioned tract of land as soon as the aforesaid suit is either settled or dismissed, at which time the sale is to be closed." The concluding clause provided that in the event the first party did not deliver the possession of the farm he should reimburse the second party any and all sums paid on account of the purchase price, together with

the further stipulated sum of $150 for any additional expense incurred in seeding the land. Interest, taxes and insurance were to be "adjusted to the date of transfer and closing." On the same occasion, Taylor, at the request of Meloy, who expressed a wish to put a crop on the land, delivered to him a written statement addressed, "To whom it may concern," that he had sold the farm to Meloy and that he was entitled to the possession of the same.

On October 17, 1916, Strayer, who was ignorant of the negotiations between Taylor and Meloy, secured from Creel a written agreement to purchase the farm at $12,000. Subsequently, Meloy and Kincheloe induced Creel to withdraw his offer of purchase upon a secret agreement that Meloy would consummate his purchase from Taylor and then sell to Creel for $12,000. On November 14, 1916, shortly after this arrangement between Meloy and Creel, these parties and Kincheloe each filed his petition in the case. Meloy's petition set out his contract with Taylor to purchase the farm at $10,750, and prayed that such orders might be entered as would give him a good title to the property; Kincheloe's petition asked that he be paid his commissions of $500 on the sale to Meloy; and Creel's petition withdrew his offer of $12,000 for the farm, and asked that Strayer be decreed to refund the $250 paid thereon. On December 8, 1916, Strayer served written notice on all the parties that he would move the court to confirm the sale of Creel. At the hearing of this motion, upon Creel's statement that he still desired to purchase the farm at $12,000, the judge dismissed all three of the petitions and confirmed the sale to Creel on the terms of his first offer. Finally, Meloy filed an additional petition praying for a personal decree against Taylor for $625, the difference between the sale to petitioner and the sale to Creel, which it was alleged Taylor would receive. Kincheloe also filed an additional petition in which he renewed his demand for his commissions. Both of these peti-

tions were subsequently dismissed, but the former without prejudice to Meloy's right, if so advised, to litigate with Taylor the demand asserted therein.

The circuit court correctly construed the written contract of sale between Taylor and Meloy to be a conditional contract, only to become effective in the event Strayer was divested of possession and interest in the farm, stipulating on its face the damages to be paid Meloy should Strayer not be so divested. The court also rightly held that the confirmation of the sale to Creel rendered "null and void and of no effect" the contract between Taylor and Meloy, except to entitle Meloy to receive the $250 paid by him to Taylor, which sum had been tendered him by the latter.

We are of opinion that the circuit court properly determined the rights of Taylor and Strayer with respect to the Aspen Hill farm under the agreement of May 8, 1916; and, therefore, its rulings upon subordinate questions followed in natural and necessary sequence. Strayer was within his rights in invoking the aid of a court of equity to protect his interests under his contract; and the confirmation of the sale to Creel was within the pleadings and warranted by the evidence. In addition to the conditional character of the contract of sale between Taylor and Meloy, both Meloy and Kincheloe, at the threshold of the negotiations, were affected with both actual and constructive notice of the litigation between Strayer and Taylor, and of the rights and equities of Strayer in the farm. An examination of the record would have advised them that a court of equity had acquired jurisdiction of the parties and the subject matter, and that they would deal with the property at their peril. At best, Meloy was only a *pendente lite* purchaser, with actual and constructive notice of the pending suit, and took the property subject to any decree that might be rendered therein with respect to it, and Kincheloe occupied no higher ground. *Hurn* v. *Keller*, 79 Va. 415; *Nixdorf* v. *Blount*, 111

Va. 127, 68 S. E. 258.   Nor did appellants better their condition by attempting to stifle Creel's bid.   Such aggreements are opposed to public policy and illegal.   *Bolling* v. *Mullins,* 111 Va. 250, 68 S. E. 982.

The decrees complained of are without error and must be affirmed.

*Affirmed.*